Judith McDANIEL, Plaintiff (Respondent),

v.

Roy B. McDANIEL and Leslie E. McDaniel, Co-administrators of the Estate of Charles T. McDaniel, Deceased, Defendants (Appellants).

No. 45542.

Supreme Court of Missouri,
En Banc.

Oct. 14, 1957.

Thurman, Nixon & Blackwell, J. W. Thurman, Jeremiah Nixon and Earl R. Blackwell, Hillsboro, for appellants.

Dearing, Richeson & Weier, Samuel Richeson, Hillsboro, for respondent.

HYDE, Judge.

This case was commenced in the Probate Court of Jefferson County by filing a demand against the estate of Charles T. McDaniel, deceased (claimant's grandfather), for services rendered deceased and his wife, Lillie Mae McDaniel (claimant's grandmother), alleged to have been pursuant to an agreement that claimant (hereinafter called plaintiff) was to be paid for such services. Upon appeal from the Probate Court, the case was tried in the Circuit Court of Jefferson County, resulting in a verdict and judgment for plaintiff for $13,805. The administrators of the estate of Charles T. McDaniel, deceased (hereinafter called defendants) have appealed.

Defendants contend that plaintiff's evidence was insufficient to establish the alleged agreement and say that the Court should have directed a verdict for them. This case was submitted in Division No. 1 of this Court and an opinion written, which

was not adopted because the members of the Division were equally divided, and, therefore, the case was transferred to the Court en Banc. (See Sec. 9, Art. V, Const. V.A.M.S.) We have decided that the opinion written in Division accurately stated the facts and correctly ruled defendants' contention concerning the sufficiency of the evidence; and we, therefore, adopt that portion of the opinion hereinafter set out without quotation marks, as follows:

There was evidence tending to show that in the year 1927, Charles T. McDaniel and Lillie Mae McDaniel, his wife, resided on the McDaniel farm near Catawissa. They were the parents of seven living adult children who had left the McDaniel farm, including the son Oscar T. McDaniel, father of plaintiff. During the year 1927 or 1928, the son Oscar brought his three small daughters, Alice, four or five years old; Ruth, three years old; and Judith, one year old, to the McDaniel farm home where the four continued to live until 1943 when the oldest, Alice, left the home, although she returned to visit from time to time until the death of her grandfather, October 16, 1951. The daughter Ruth continued to live at the McDaniel farm until 1945, when she left to accept employment in St. Louis.

The sister Ruth, witness for plaintiff, testified that, although she had married in 1943, she had continued to live in the McDaniel farm home until Judy's graduation from high school in 1945; and that she, Ruth, overheard a conversation between the grandfather and Judy in the living room in the McDaniel farmhouse in May, 1945. The grandfather, Charles T. McDaniel; the father, Oscar T. McDaniel; the sister, witness Ruth; and the plaintiff Judy were all present. Inasmuch as this conversation was particularly relied on by plaintiff in tending to establish her claim we here set out Ruth's testimony, relating to the conversation, in question-and-answer form, as follows,

"Q. Were you there on the farm during the month of May, 1945, about the time of Judy's graduation from high school? A. Yes, sir, I stayed until she got out of school. * * *

"Q. Were you present at a conversation there at the farm between yourself and Judith and your grandfather? A. Yes, sir. * * *

"Q. Will you tell the court and jury what was said there by your grandfather and by Judy and by yourself? A. I had planned on leaving when Judy got out of school. When Judy got out of school she wanted to leave home too and get a job. We started quarreling over it. I wanted to leave and she wanted to leave. We knew somebody had to stay. Finally, Grandpa asked my father what we were quarreling over. He said, 'Both of the girls want to leave home and get a job.' Grandpa said one of them had to stay. Pop (plaintiff's father) said, 'They both want to get out and earn their own living.' Grandpa said somebody had to stay with Grandma and help take care of her, that they would have to hire somebody if she left and that they needed her. Grandpa told her, he said, 'If she stays they would give her a good deal.'

"Q. Following that conversation did Judy stay? A. Yes, she did. She gave in and she stayed."

During the years 1945 to 1951 the grandmother, Lillie Mae, was in poor health. She had arthritis, erysipelas "ever so often in the winter months," and had an ailment of the heart. She had ulcers or open sores on her legs with considerable drainage, and a hernia requiring the use of a truss. The grandfather, Charles T., was not well enough to do much work after 1945, and during the last six months of his life was bedfast. In the last years of his life the grandfather's eyesight was not good. He had to feel his way about the room by using two canes and his food had to be put on his plate. During the period of the last illness of the grandfather, the grandmother "had

a stroke," although presently she could sit up in bed.

Living conditions at the McDaniel home were primitive. The house consisting of six rooms—two upstairs—was old. Water was drawn by hand from a well, and the laundry was done with a tub and washboard, the water having been heated in a kettle over a fire in the yard.

There was abundant evidence tending to show that plaintiff performed burdensome and disagreeable personal and nursing services to her grandmother (and to her grandfather in his last illness) during the years 1945 to 1951 in addition to household work, such as cooking, washing, canning and preserving. She also tended the garden and the chickens, and milked. Defendants-appellants, administrators, do not dispute the facts of these valuable services which we have only generally stated.

Attending now the contention of defendants-appellants that no substantial evidence tended to support the conclusion there was an agreement or mutual understanding that plaintiff was to be remunerated for her services—we have the opinion that the jury reasonably could infer from the evidence introduced in this case that plaintiff remained in the McDaniel home with the expectation of being paid for her services, that the grandfather Charles T. intended that she should be paid for her services, and that an agreement existed between them that she was to be remunerated therefor.

■■■ Where a family relation exists between a person rendering services and the recipient thereof (such services as were shown in evidence in the instant case), the rule followed in this state is that no promise or agreement that the services are to be paid for is implied from the mere fact that the services have been performed and accepted. Prima facie, the presumption is that such services are rendered gratuitously, casting upon the party claiming compensation therefor the burden of rebutting the presumption. In overcoming the presumption, a claimant must prove either by direct evidence or by evidence from which it may be reasonably inferred that there was an agreement or mutual understanding the claimant was to be remunerated for the services rendered. While mere expressions of gratitude or intended generosity on the part of the recipient are not alone sufficient, a promise to pay may be implied from any facts or circumstances which in their nature reasonably justify the inference of an actual contract of hire or an actual understanding between the parties to that effect. Kopp v. Traders Gate City Nat. Bank, 357 Mo. 659, 210 S.W.2d 49, and cases therein cited; Ashley v. Williams, Mo.Sup., 281 S.W.2d 875; Chandler v. Hulen, 335 Mo. 167, 71 S.W.2d 752; Vosburg v. Smith, Mo. App., 272 S.W.2d 297; Farris v. Faris' Estate, Mo.App., 212 S.W.2d 71.

The cases cited by defendants-appellants are not decisive here. In Farris v. Faris' Estate, supra, the claim was upon a contract to pay claimant by suitable and adequate provision by will. Not only was the evidence insufficient in tending to establish the express contract as averred, but there was no substantial evidence of a contract on the part of deceased to pay claimant for the alleged services, and on the part of claimant to charge compensation for such services. In Whitworth v. Monahan's Estate, Mo. App., 111 S.W.2d 931, the action, originating in the probate court, was on the express contract to pay plaintiff "the entire amount of [the] estate" of decedent. In Smith v. Davis' Estate, 206 Mo.App. 446, 230 S.W. 670, the declaration of Davis indicated no more than his intention to bestow a bounty—no evidence supported the fact of a contract to pay. Claimant Smith had merely continued to render services such as are performed by a boy on a farm; moreover, claimant had received property which, assuming there was a contract, was reasonable compensation for the services rendered.

■■■ In the instant case, it is conceded plaintiff stood in a family relationship to her grandfather and was a member of the

family household. It is also true that she, her sisters, and her father may have received the valuable privileges of a haven and a home when they had come to the McDaniel farm to make it their home in 1927. Yet, there was evidence tending to show that in 1945 plaintiff was desirous of leaving the home for the purpose of seeking employment. She forewent departure from the grandfather's house and remained therein to render the services mentioned, supra. Compare Kopp v. Traders Gate City Nat. Bank, supra. Her grandfather had said that one of the sisters had to stay with the grandmother, and that "they needed her." He said, "If she stays they would give her a good deal." A jury reasonably could infer that plaintiff, in remaining and performing the services as stated, was relying on what her grandfather had said and performed the stated services in expectation of the reasonable remuneration the jury reasonably could infer the grandfather had intended to and did commit himself to provide for or pay.

But it is contended by defendants-appellants that plaintiff's claim must fail because, they say, any agreement the jury could reasonably infer from the quoted conversation and the shown circumstances of the case was for the care of the grandmother only; and that, inasmuch as the claim, as stated by plaintiff in her formal demand, was for services rendered to both the grandmother and grandfather, there was a failure to prove the contract as alleged. We cannot follow this argument. We think the conversation as quoted and the shown situation and circumstances of the aged grandparents, both of whom were in failing health, carry with them the reasonable bases for a conclusion the services contemplated were to be at the family home to the benefit of both of the grandparents—"they needed her." It also is argued the language "they would give her a good deal," as used by the grandfather in the conversation of May, 1945, could have indicated no more than the intention of the grandfather, on the one hand, to bestow a bounty, and the expectation of plaintiff, on the other hand, to receive such bounty, as distinguished from an actual mutual understanding that the services were to be paid for. And we have no doubt the jury could have so found. However, we are also of the opinion the words "they needed her" and "they would give her a good deal" are also reasonably susceptible to the construction that reasonable compensation was intended to be forthcoming "if she stayed" and ministered to their needs. We think the question of the grandfather's intention by the use of the quoted language, under all of the shown circumstances of this case, was for the jury.

It is further urged that the testimony of the sister Ruth demonstrates that both of the sisters, Ruth and Judy, realized (prior to the time any supposed contractual arrangement was entered into) that one would have to stay at the farm with the grandparents. They had quarreled over the question—which was to stay? It is asserted it is apparent that Judy did not "give in" and stay at the farm because of any agreement between herself and her grandfather, but, on the contrary, the very language of the conversation as detailed by the witness demonstrates that Judy voluntarily remained at the farm because she felt a moral obligation to do so, or out of a sense of loyalty and love for her grandparents who had reared her since early childhood, and because her sister Ruth was married. Any inference, say defendant-appellants, that Judy remained and performed the stated services in compliance with a contract with her grandfather would do violence to the very language of the conversation of May, 1945. It is true that a jury could have inferred that Judy voluntarily remained with her grandparents because of a sense of gratitude and devotion to them. Nevertheless, as we have said, we have the view that the jury, in considering the conversation as a whole and the circumstances and situation of the parties, was reasonably justified in finding an agreement that Judy was to be remunerated.

In this kind of a case, wherein there is the presumption that services were gratuitously rendered, it is essential but enough for a claimant to introduce evidence from which a jury may reasonably find that the claimant and deceased mutually understood the services rendered and received were not voluntary but were for remuneration. Ashley v. Williams, supra; Chandler v. Hulen, supra; Brown v. Holman, *292* Mo. 641, 238 S.W. 1065; Vosburg v. Smith, supra.

We rule that the trial court did not err in overruling defendants' motion for a directed verdict.

■ Defendants also allege error in the Court's refusal of their offer of proof to show that plaintiff's father contributed nothing to support her and her sisters from 1928 to 1951 and that they were supported by their grandfather. Defendants say this was error "because in cases of this type the facts and circumstances of the entire relationship, even extending over a long period of time are admissible." However, we hold there was no prejudicial error in this ruling because the facts included in this offer were shown by other evidence (received both before and after this offer) from which it appeared that, from the time plaintiff was one year old, she and her father lived with her grandfather; that plaintiff's father only worked for pay for one month between 1928 to 1951 and did that to pay for an operation for plaintiff; and that plaintiff's sisters likewise lived in their grandfather's home until they left in 1943 and 1945. Furthermore, as hereinafter shown, the jury was instructed that a family relationship did exist between the parties herein involved.

Defendants further claim error in giving Instructions 1 and 2 at plaintiff's request. As to both instructions, defendants say they were erroneous because they did not limit recovery to services rendered to plaintiff's grandmother. Their contention is there was no evidence to support submission of services to plaintiff's grandfather. This contention is overruled for the reasons stated concerning defendants' similar contention as to a directed verdict.

■ Defendants' specific contention as to Instruction 1 is that it "did not submit, as an item for the jury to find, the amount or extent of the services, or the times during which they were rendered;" citing Kleinberg v. Kinealy, Mo.App., 207 S.W. 237; Carroll v. Young, Mo.App., 267 S.W. 436; Love v. Richardson, Mo.App., 61 S.W. 2d 220. Instruction 1 did limit the period of services to be considered to be "from May of 1945 to October 16, 1951 inclusive". This instruction also told the jury that a family relationship existed between the parties; that on account of this relationship "the presumption is that the services rendered are acts of gratuitous kindness"; and that the question for the jury was "taking into consideration all the facts or circumstances in evidence, including the nature and degree of the relationship of the parties and all the facts and circumstances in evidence, to determine whether there was any agreement and understanding for compensation for the services claimed to have been rendered or not." Instruction 1 concluded as follows: "Now, if you find from the greater weight of the evidence in this cause that plaintiff rendered any or all of the services mentioned in the evidence to her grandfather and his wife, in nursing and caring for said deceased and his wife night and day while they were enfeebled by sickness and old age, and cooking and serving their meals, washing and ironing their clothes, keeping house for them, tending and raising a garden for them, canning fruit and vegetables for them, looking after the chickens belonging to them, or that she rendered any of said services, if the jury so find, and that at the time she rendered said services, if any, there was a mutual understanding between the plaintiff and her grandfather that he would pay for her said services, or any of them, if you so find, then you will find the issues in favor of the plaintiff and against the defendants."

It should be noted that Instruction 1 did not purport to instruct the jury as to the

amount of plaintiff's recovery or how to compute it. Its reasonable construction is that it only told the jury that, if plaintiff rendered any of the services stated, under the agreement submitted, then she was entitled to a verdict in some amount. Instruction 3 was the only instruction which referred to the amount of recovery (on the basis of reasonable compensation therefor) and there are no allegations of error concerning Instruction 3 in defendants' brief. The instructions in the cases cited by defendants did erroneously instruct the jury as to the amount of recovery. In the Kleinberg case (207 S.W. loc. cit. 238), it is pointed out that evidence was admitted as to services rendered for a period of many years prior to that covered by the claim and the instruction authorized recovery for all services "mentioned in the evidence." Therefore, the Court thought "the jury, in arriving at their verdict, may well have taken into consideration the testimony as to such services as was testified to as having been performed by the claimant for the deceased during his lifetime for said period antedating those set out in the claim"; which, of course, would have been prejudicial. In the Carroll case (267 S.W. loc. cit. 440), the verdict was excessive under the plaintiff's own evidence which showed that plaintiff had not worked during all of the period for which she had made the claim and, therefore, the instruction authorizing this verdict for the entire period was obviously prejudicial. The instruction in the Love case (61 S.W.2d loc. cit. 723), the first part of which was substantially the same as Instruction 1 herein, was approved by the St. Louis Court of Appeals. See also Ashley v. Williams, Mo.Sup., 281 S.W.2d 875, 881, referring to the instruction in the Love case. We, therefore, hold there was no prejudicial error in giving Instruction 1.

Defendants' main claim of error in Instruction 2 is that it omitted an essential element of plaintiff's case by failing to require a finding that a contract existed between plaintiff and her grandfather to pay her for her services. Instruction 2 was as follows:

"The Court instructs the jury that if you believe and find from the evidence in this case that in May of 1945 Judith McDaniel had completed her high school education and told her grandfather Charles T. McDaniel that she intended to leave his home to obtain employment, if you so find, and if you further find that upon being informed of such intention, if you find he was so informed, said Charles T. McDaniel did say to Judith McDaniel that he and his wife had to have someone to take care of them and stay on the place, and that if Judith McDaniel would stay with them that he would see that she got a good deal out of it, if you so find, and if you further find that Judith McDaniel did thereafter in compliance with such arrangements, if you find they were made, stay with Charles T. McDaniel until his death and perform services for the said Charles T. McDaniel and his wife with the expectation of being paid therefor, if you so find, then you will find the issues in favor of the plaintiff Judith McDaniel."

■■ Certainly, if an instruction, purporting to cover the whole case and authorize a verdict, leaves out a fact, essential to recover, it is erroneous; and it is not cured by another instruction requiring the finding of such fact because in such a situation the instructions are in conflict. Hatfield v. Thompson, Mo.Sup., 252 S.W.2d 534; Banta v. Union Pac. R. Co., 362 Mo. 421, 242 S.W.2d 34; McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S.W.2d 37. However, as further stated in the McDonald case (59 S.W.2d loc. cit. 40) "instructions must be read and construed together"; and "if the plaintiff's instruction, covering the whole case and authorizing a verdict, does require the finding of all essential elements of the plaintiff's case, but states some of these indefinitely or ambiguously or in language which might be misleading, then an instruction on the part of the defendants which clearly and specifically requires the finding of essential elements does not conflict with the plaintiff's instruction, but instead makes it clear and definite"; and so "when all of the instructions thus harmonize

and when read together correctly state the law, any such indefinite, ambiguous or misleading language in the plaintiff's instruction is cured by the other instructions." The main instruction in the McDonald case authorizing a plaintiff's verdict although indefinite as to an essential element (timely knowledge of a defendant that gas was escaping into a basement) was held cured by a definite instruction given at the defendant's request. See also Larey v. Missouri-Kansas-Texas R. Co., 333 Mo. 949, 64 S.W. 2d 681, 684; Counts v. Thompson, 359 Mo. 485, 222 S.W.2d 487, 491; West v. St. Louis Public Service Co., Mo.Sup., 236 S.W.2d 308, 313; Higgins v. Terminal R. R. Ass'n, 362 Mo. 264, 241 S.W.2d 380; Wilcox v. Coons, 362 Mo. 381, 241 S.W.2d 907, 913; Machens v. Machens, Mo.Sup., 263 S.W.2d 724, 732–733. Instruction 2 required a finding of the facts upon which plaintiff based her claim of a contract for compensation (and upon which we have held the jury could have found such a contract) and it further required a finding that plaintiff performed services "in compliance with such arrangements * * * with the expectation of being paid therefor." She only could have had such expectation if the hypothesized "arrangements" for "a good deal" amounted to a contract. Certainly such an expectation meant that these services were not gratuitous and, therefore, we think the requirement of a contract, although not specifically stated, was indefinitely expressed. Five other instructions in the case made the requirement of a contract clear, definite and emphatic.

As hereinabove noted, plaintiff's Instruction 1 informed the jury of the presumption that plaintiff's services were gratuitous and told the jury the question to be determined by them was "whether there was any agreement and understanding for compensation for the services." Instruction 1, in the final paragraph hereinabove set out, also specifically required a finding of "a mutual understanding between the plaintiff and her grandfather that he would pay her for her said services." Plaintiff's Instruction 3 stated the kind of proof required and authorized a verdict for plaintiff if the jury found "that plaintiff rendered said services, or any of them, to her grandfather with the expectation and understanding previously had with her grandfather that she was to be paid therefor, if you so find, and with his intention and understanding with her that she was to receive pay therefor." Three instructions, given at defendants' request (Instructions 5, 6 and 7) were directed to that issue only and covered nothing else. We summarize them as follows: Instruction No. 5 told the jury that before they were authorized to find for plaintiff, they must believe and find from the evidence that there was an expectation on the part of the plaintiff that she would receive pay and that the deceased intended to pay for the services, and unless they so found, they should find for defendants. Instruction No. 6 told the jury that if they found that the services were rendered by plaintiff with no intention or understanding on the part of deceased or of plaintiff that there should be a charge therefor, then the verdict should be for defendants. Instruction No. 7 instructed the jury concerning the family relationship and the presumption in connection therewith that the services were gratuitous; and said that, unless plaintiff had discharged the burden of proving a mutual understanding or agreement between the plaintiff and the deceased that plaintiff expected to charge and deceased expected to pay for the services, the verdict should be in favor of the defendants. It seems clear from the instructions given at the request of both parties that the main issue in the case was whether or not there was an agreement between plaintiff and her grandfather that he was to compensate her for her services; and we do not think the jury could have believed, under the whole submission, that they could return a verdict for plaintiff unless they found there was such a contract. We, therefore, hold, under these circumstances, that giving Instruction 2 was not prejudicial error.

The judgment is affirmed.

All concur.