In the ESTATE OF Pluma E. SANDERS.

Kenneth E. SANDERS and Nelda Miller, Distributees-Appellants,

v.

Lloyd L. SANDERS, Claimant-Respondent.

No. 14476.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 30, 1986.

Motion for Rehearing or to Transfer to Supreme Court Denied Nov. 14, 1986.

Application to Transfer Denied
Dec. 16, 1986.

Kevin J. Checkett, Esterly, Spradling & Checkett, Carthage, for distributees-appellants.

Robert B. Hankins, Springfield, for claimant-respondent.

MAUS, Judge.

Claimant Lloyd L. Sanders filed in the Probate Division of the Circuit Court of Lawrence County a claim against the estate of his mother, Pluma E. Sanders, deceased. The claim sought recovery of $25,000 "on account of labor for growing crops, caring for farm animals, equipment and machinery and farm property." After a hearing, the probate division allowed the claim in the amount of $25,000 and assigned it to Class Nine. Two distributees appeal.

The claimant and four of the other distributees appeared pro se at the hearing. Much of the testimony was in general, conclusory terms, often in response to leading questions. The following is a summary of the evidence.

Homer Sanders and his wife Pluma E. Sanders, owned, lived on and operated a 350–acre farm in Lawrence County. They raised wheat, beans, fescue seed, hay and cattle. Homer Sanders died in 1974 at the age of 84 years. After his death, Pluma E. Sanders continued to live on the farm for a period of time, presumably for approximately five years. She then lived in a home in Miller, provided by her son Eugene Sanders. The last three or four years of her life Pluma E. Sanders resided in Maryland. Her daughter Marcelene Bilodeau is shown by the application for letters to reside in Riverdale, Maryland. Whether Pluma E. Sanders resided in the daughter's home or under her care does not appear in the record. Referring to the time Pluma E. Sanders lived in Lawrence County, another daughter, who lived in the vicinity, said, "I

took care of her. ... I think we could all turn in claims of our labor, things we've done for mother." Pluma E. Sanders died December 15, 1984, at the age of 88 years.

The claimant lived in the vicinity of his parents' farm. He testified he had helped in the operation of that farm for thirty years. At one time he had a "hired hand" who helped, but in recent years he and his son Gary Sanders operated the farm. He repeatedly said his claim was only for the time after his father's death and was not for any work or labor provided by his son. In respect to growing crops, he said he sharecropped the farm. He, as the tenant, received two-thirds of the crops and his mother, as the landlord, received one-third. At one point in his testimony, claimant acknowledged that he had received all he was entitled to as a sharecropper.

The claimant described the services for which he sought compensation and the amounts claimed in the following general terms. For caring for the decedent's cattle, he valued his services at $15,000. He said there had been as many as 80 to 90 cattle. The inventory listed 36 head of cattle valued at $9,000. The record contains no estimate of the time involved or the details of such services.

For looking after the rental of the residence on the farm, the claimant valued his services at $50 per month for 60 months, or $3,000. The house was valued at $2,000. It rented for $100 or $150 per month. It was not rented for one year during the five year claim period. The claimant's services included such things as thawing frozen water pipes and painting. There was evidence carpenters were hired by the decedent to make some repairs.

The claimant valued his services in looking after the decedent's banking business at $2,500. There was no description of these services nor estimate of the time involved. Exhibits presented included checks on an account of "Pluma E. Sanders or Kenneth E. Sanders—Lloyd L. Sanders." These checks were dated from April 6, 1981, to November 28, 1984. They were signed by Lloyd L. Sanders. They included 14 checks for labor payable to Gary Sanders totalling $3,040. One check, dated October 30, 1984, in the amount of $250 was noted to be for brush hog labor and was payable to claimant Lloyd L. Sanders. Another check for $2,135 payable to Andrews 4A Farms was for combining. The exhibits also included two tickets for the purchase of beans issued by a farm service store in 1982. Those tickets showed Pluma E. Sanders was paid $3,760.22 and Lloyd L. Sanders was paid $9,020.46. A $500 charge for combining was deducted from Pluma's share of the gross proceeds and that $500 was paid to Lloyd in addition to his share of the gross proceeds for beans.

In respect to the final item of his claim, the claimant testified, "A lot of times there was no trucking charge or combining charge for the crops that I hauled to town." He added that ordinarily the charge would be a third of the combining and a third of the trucking. He said that he had not been reimbursed for these services. He was then asked, "What value would you say that that had, sir?" He answered, "Well, it—probably $4,000 or $5,000."

The claimant testified that he had expected to be paid for his work, labor and expenses. However, he said he had no arrangements with his parents for payment.

The basic point of the distributees-appellants is that the court erred in allowing the claim because the claimant was in a family relationship with the decedent and there was no evidence of an agreement by the decedent to pay for the services allegedly rendered.

The principles of law applicable to claims for services rendered a decedent are of long-standing. They have received the following expression.

> These cases recognize the principle that where a family relationship is established, there is a presumption that the services were rendered gratuitously, even though the claimant 'entertained hope' of a payment ([*Smith v. Estate of*] *Sypret* [421 S.W.2d 9 (Mo.1967) ], supra),

and that consequently he must show an agreement or understanding for payment; but also, that such a showing need not necessarily be made by direct evidence of a specific contract (*Winschel* [*v. Glestetter*, 393 S.W.2d 71 (Mo.App. 1965) ] *McDaniel* [*v. McDaniel*, 305 S.W.2d 461 (banc. 1957) ], *Allmon* [*v. Allmon*, 314 S.W.2d 457 (Mo.App.1958) ], supra). In *McDaniel* [*v. McDaniel* ], supra, it was said, 305 S.W.2d [461] at loc. cit. 464 [ (Mo.1957) ]: 'In overcoming the presumption, a claimant must prove either by direct evidence or by evidence from which it may be reasonably inferred that there was an agreement or mutual understanding the claimant was to be remunerated for the services rendered. While mere expressions of gratitude or intended generosity on the part of the recipient are not alone sufficient, a promise to pay may be implied from any facts or circumstances which in their nature reasonably justify the inference of an actual contract of hire or an actual understanding between the parties to that effect.' The adjudicated cases also recognize that where no family relationship exists, the law presumes an intent to pay for the services.

*Jaycox v. Brune,* 434 S.W.2d 539, 544 (Mo. 1968). Also see *Steva v. Steva,* 332 S.W.2d 924 (Mo.1960); *Witte v. Smith,* 237 Mo. App. 639, 152 S.W.2d 661 (1941). These principles are also expressed and discussed in MAI 28.00 to 28.04 and 32.16.

As stated,

'[T]here is never a recovery by a member of a family owing a duty on what is technically termed an implied contract in law; but as stated before, the recovery must be upon an express contract, or from evidence from which it can be reasonably concluded that there was a distinct understanding and agreement, understood and acted upon between the parties, a contract established on inference rather than implication.'

*Witte v. Smith,* supra, 152 S.W.2d at 664. Such a recovery may be had upon the basis of direct evidence of an express contract.

*Kopp v. Traders Gate City Nat. Bank,* 357 Mo. 659, 210 S.W.2d 49 (banc 1948). Or, it may be had upon the basis of evidence "from which it may be reasonably inferred that there was an agreement or mutual understanding the claimant was to be remunerated for the services rendered." *Kopp v. Traders Gate City Nat. Bank,* supra, 210 S.W.2d at 51. Evidence of such a mutual understanding is often found in declarations by the decedent indicating an expectation that the claimant would be paid. *Brown v. Holman,* 292 Mo. 641, 238 S.W. 1065 (1922). Such declarations include the following: "He would pay him better than if he got a business education," *Id.* 238 S.W. at 1067–1068; "What I have will be hers someday," *Steva v. Steva,* supra, at 927; I will "take care of her for all she had done," *Schanz v. Estate of Terry,* 504 S.W.2d 653, 656 (Mo.App.1974), 92 A.L. R.3d 719 (1979); and "she is only taking care of her own stuff." *Kopp v. Traders Gate City Nat. Bank,* supra, 210 S.W.2d at 51.

Some cases have indicated such a mutual understanding may be inferred from the extraordinary nature of the services rendered. "It would be unreasonable to conclude from all this uncontradicted evidence that services of such a character, extending over such a long period of time, rendered by one child with no participation by the deceased's other children therein, so far as this record shows, should be regarded as gratuitous because of the family relation between plaintiff and her father." *Liebaart v. Hoehle's Estate,* 111 S.W.2d 925, 930 (Mo.App.1938). "Stella's services were not such as members of a family usually and ordinarily render to each other." *Wells v. Goff,* 361 Mo. 1188, 239 S.W.2d 301, 303 (1951). However, in regard to a claim for extensive services in the upkeep, maintenance and operation of a home and farm that doctrine has been rejected.

If Judge Cox meant to hold that in this state, between members of the same family, where unusual and extraordinary services were rendered to a member thereof, a claimant need not show an agreement or mutual understanding that

the decedent intended, and claimant expected to receive, pay therefor, then, that is a doctrine new and strange to Missouri jurisprudence. No other case has ever so held and his opinion has never been approvingly cited on that point. We do not think it is the law in Missouri and so hold.

*Farris v. Faris' Estate,* 212 S.W.2d 71, 76 (Mo.App.1948). Under the circumstances of this case it is not necessary to resolve the conflict between those opposing doctrines. The claimant's services were not shown to have the characteristics referred to in *Liebaart.*

The term "family relationship" as used in the above principles of law has received several definitions. MAI 32.16 declares there is such a family relationship if "there existed between the plaintiff and (name of decedent) such a relationship that there was a natural or moral obligation to support and care for each other." MAI 32.16. Also see *Jaycox v. Brune,* supra; *Steva v. Steva,* supra.

"Generally speaking, services rendered by a child to the parent are presumed to be gratuitous. This rule has been stated or applied in a great number of instances." Annot., Recovery for Service to Relative, 7 A.L.R.2d 46 (1949). Some doubt has been expressed concerning whether or not that rule is applicable to services rendered by a child not living in the same household as a parent. Committee's Comment to MAI 28.-04. However, that doubt has not been expressed in the cases. The law presumes that services rendered by a daughter to her father are gratuitous, ... ." *Witte v. Smith,* supra, 152 S.W.2d at 664.

[T]he general doctrine ... is that services rendered by a child to a parent are not presumed, as in cases between strangers, to be for pay, and to entitle the child to a recovery for services rendered the parent a contractual relation must be shown, evidencing an intention on the part of the parent to pay and a right on the child to demand and receive such pay.

*Brown v. Holman,* supra, 238 S.W. at 1067. "[T]he long-recognized principle that services rendered by a child to the parent are presumed to be gratuitous, ... ." *Vosburg v. Smith,* 272 S.W.2d 297, 301 (Mo. App.1954), citing cases. That long-recognized principle has been assumed to be applicable even though a son rendering substantial farming work lived in a separate home. *Matter of Estate of Kunzler,* 548 S.W.2d 212 (Mo.App.1977).

The place of residence of a child may be appropriately considered in determining the character of the services rendered by a child. *Liebaart v. Hoehle's Estate,* supra. However, in considering the circumstances of this case, the fact the claimant lived in a separate home in the vicinity of his mother's farm does not rebut the presumption.

The claimant lived near the decedent's farm. An exhibit established that in at least one instance the claimant was paid for labor on the farm. Exhibits further established that in a period of 42 months the claimant's son was paid $3,040 for labor on that farm. The services of the claimant were described only in vague, general terms. There was no evidence of the extent of farm work rendered by the claimant beyond his participation as a sharecropper, that for which he was paid and that provided by his son. The time and effort for which the claimant sought recovery is a subject of speculation. Other children rendered services to her, such as providing care and a home in which to live. The claimant's services were not demonstrated to be of an extraordinary nature.

This case was tried before the effective date of the repeal of the Dead Man's Statute, § 491.010. However, not one objection was made to any testimony offered by the claimant. It is significant the claimant did not refer to any declaration of the decedent which even provided an inference of her understanding that he would be paid for the services outlined in evidence.

In all events, an understanding for payment on the part of the decedent is affirmatively dispelled by the following question and answer.

Q. —in this 30–year time that you've been farming the land for your folks, did you have any arrangements with them as far as payment to you?

A. No, not really.

That testimony demonstrates the claimant did not establish a basis for recovery within the applicable principles of law cited above.

The claimant does not contend he was not in a family relationship with the decedent. Nor does he by argument or citation dispute the principle that a claimant in a family relationship with a decedent must by direct evidence or by inference establish an agreement or an understanding by the decedent that services rendered would be paid for. He contends that principle is not applicable because it expresses an affirmative defense which may not be considered because it was not pleaded.

That contention has been succinctly answered. "The present case originated in the probate court and is not subject to the Rules of Civil Procedure. ... Furthermore, the question Morris really raises is that the evidence is insufficient to support the judgment...." *Morris v. Retz,* 413 S.W.2d 544, 546 (Mo.App.1967). Also see *Matter of Estate of Kunzler,* supra.

Under the Probate Code Revision of 1980, the hearing upon the claim in question was an adversary proceeding. § 472.-140, RSMo 1978. However, Rule 41.01(b) in part provides: "[T]hat Rule 55 shall not apply unless the court orders the application of Rule 55, ...." Rule 55 governs "Pleadings and Motions." The court did not invoke that rule in this case. In such circumstances, the personal representative had no duty to file a responsive pleading to the claim. Willman, Recent Developments in Missouri: Probate Code—Claims, 49 U.M.K.C. L.Rev. 534 (1981). Also see Mo. Estate Administration, § 7.26, (MoBar 3rd ed. 1984). The answer provided in *Morris* is applicable to the claimant's contention. That contention has no merit. The judgment allowing the claim is reversed and judgment entered denying the claim.

HOGAN and FLANIGAN, JJ. and PREWITT, P.J., concur.