Pauline OSBORNE, Appellant,

v.

BOATMEN'S NATIONAL BANK OF SPRINGFIELD, Personal Representative of the Estate of G.C. McDowell, Deceased, Respondent.

No. 14845.

Missouri Court of Appeals, Southern District, Division One.

June 23, 1987.

Wayne K. Rieschel, Buffalo, for appellant.

Richard Owensby, Richard L. Schnake, Neale, Newman, Bradshaw & Freeman, Springfield, Charles F. Johnson, Buffalo, for respondent.

HOLSTEIN, Judge.

This case is an appeal from the probate division of the Circuit Court of Dallas County, Missouri. Pauline Osborne ("Claimant") filed a claim in the sum of $30,000.00 against the Estate of G.C. McDowell, for services alleged to have been performed by the claimant during the lifetime of G.C. McDowell ("Decedent"). Claimant appeals a judgment denying her any relief. We affirm the judgment of the trial court.

The issues raised in the brief of claimant, while somewhat convoluted, are that the trial court erred (1) in finding that the claimant did not expect to be paid for the services which she provided, (2) in finding that a family relationship existed between the decedent and the claimant, (3) in finding that there was no evidence of the terms of a contract or agreement between the decedent and no evidence of the extent and duration of the services rendered by the claimant, and (4) in finding that a $10,000.00 legacy to claimant in the decedent's will was intended by the decedent to pay her for any services which she performed.

Pursuant to a request by the estate, the trial court filed findings of fact and conclu-

sions of law. The trial court found, and the record supports, the following facts:

Decedent had been separated from his wife for sometime prior to 1983. Commencing in 1983, claimant became decedent's girlfriend. The relationship flourished and by January of 1984, claimant and decedent were spending most of their time together. They had discussed marriage, but knew that nothing could come of such discussions until decedent obtained a divorce. A divorce was pending at the time of his death.

In each other's company, they would cook meals, run errands, travel and to a large extent, live together. Claimant admitted the relationship was "primarily social". Claimant and decedent had sexual intercourse during their relationship. Until April of 1985, decedent was receiving injections to improve his sexual potency.

During the times that claimant and decedent were living together, all expenses were paid by the decedent.

The decedent and claimant took two pleasure trips together in the summer of 1984. The first was to Tennessee, Louisiana and Arkansas for six days. The second trip was taken to Iowa for three days. The Iowa trip was made to attend a reunion of claimant's family. All expenses of both trips, including motel rooms in which the parties cohabited, were paid by the decedent.

Decedent was apparently in good health until November of 1984, when his health began to deteriorate as a result of an infection of his jaw. While he was no longer as robust as before, decedent was still able to move about and travel. Claimant and decedent made several trips to Columbia and Kansas City in early 1985 for surgical, therapeutic and follow-up care related to the decedent's jaw infection. On all trips made by the decedent and claimant together, the claimant drove. When traveling with another person, it had been decedent's practice to have his companion drive, as he did not enjoy driving, even when in good health.

On April 15, 1985, decedent executed his will which has now been admitted to probate. That will made provision for a $10,000.00 legacy to claimant.

On May 19, 1985, claimant left on an extended visit to her son's home in Minnesota. During her absence, the decedent discussed his intentions to talk to claimant about compensating her for services with Larry and Donna Slack. Decedent told the Slacks about the provision in the will. He stated that he intended to pay the claimant and then to omit claimant as a beneficiary under the will.

On June 19, 1985, G.C. McDowell died.

The trial court concluded that a "family relationship" existed between claimant and decedent; and, as a result, the presumption existed that any services rendered were gratuitous. The trial court also concluded that claimant had failed to present evidence of a specific contract because no evidence existed of the extent or duration of the services, and no evidence existed that the decedent intended to pay the claimant other than by way of the cash legacy. The court further found that even if the claimant had met her burden of proof, the legacy of $10,000.00 constituted full payment for the services rendered.

Claimant's first, second and third points on appeal are interrelated and, for the sake of continuity, will be treated together.

If a family relationship exists, there is a presumption that any services performed are rendered gratuitously even though the claimant entertained the hope of payment, unless the claimant can show by direct evidence, or evidence from which it may be reasonably inferred, that there was an agreement or mutual understanding the claimant was to be remunerated. *Jaycox v. Brune*, 434 S.W.2d 539, 544 (Mo.1968); *Estate of Sanders*, 719 S.W.2d 947, 949 (Mo.App.1986). For a family relationship to exist, there must be (1) a social status, (2) a head of the family who has the right, at least in a limited way, to direct or control those gathered in the household, (3) the head of the household must be obligated either legally or morally to support the other members, and (4) there must be a corresponding state of at least partial de-

pendence on other members for support. *Smith v. Estate of Sypret*, 421 S.W.2d 9, 14 (Mo.1967); *Schanz v. Estate of Terry*, 504 S.W.2d 653, 656 (Mo.App.1974). It is not essential that there be a kinship or meretricious cohabitation between an unmarried man and woman residing together to have a family relationship. *Schanz v. Estate of Terry*, supra, at 657. In ordinary cases, both the existence of a family relationship, if there was one, and whether there was an agreement or understanding that services would be paid for, are factual questions. *Jaycox v. Brune*, supra; *Schanz v. Estate of Terry*, supra, at 657.

In reviewing court tried cases, we are limited by the ubiquitous rule in *Murphy v. Carron*, 536 S.W.2d 30, 31 (Mo. banc 1976). The judge in a court tried case may believe all, part or none of the testimony of a witness, and on appeal we give due regard to the opportunity of the trial court to have judged the credibility of the witnesses. Rule 73.01(c). *Arnott v. Kruse*, 730 S.W.2d 597 (Mo.App.1987).

Here there is ample evidence to demonstrate that the relationship between claimant and decedent was primarily, if not exclusively, social. Decedent directed and controlled claimant's activities in the same limited way that most "heads of households" do in our society: by asking and receiving claimant's cooperation in performing household duties, driving on trips and providing the comfort of her society. Decedent obviously recognized at least a moral duty to support claimant by being a provider, paying travel expenses and returning claimant's affections. Such evidence was substantial evidence of a family relationship.

Inasmuch as the evidence supports the court's finding that a family relationship existed between decedent and claimant, it became incumbent upon claimant to overcome the presumption of gratuitous services by proving an express contract. Such evidence may be indirect, but it must be clear and convincing. Mere proof of the rendition of services is not sufficient. *Farris v. Faris' Estate*, 212 S.W.2d 71, 75 (Mo.App.1948). In quoting from *Witte v. Smith*, 237 Mo.App. 639, 152 S.W.2d 661 (1941), this court recently restated the rule as follows:

> [T]here is never a recovery by a member of a family owing a duty on what is technically termed an implied contract in law; but as stated before, the recovery must be upon an express contract, or from evidence from which it can be reasonably concluded that there was a distinct understanding and agreement, understood and acted upon between the parties, a contract established on inference rather than implication.

*Estate of Sanders*, supra.

We disagree with the trial court's conclusion that there was no evidence of the extent and duration of the services rendered and that there was no evidence that decedent intended to pay the claimant. However, a correct decision will not be disturbed because the appellate court disagrees with the trial judge's reasoning. *In re Estate of McMorrow*, 720 S.W.2d 400, 402 (Mo.App.1986).

The evidence of the extent and duration of the services was the testimony of claimant which indicated that the services began in January of 1984 and terminated in May of 1985. In addition, she testified that she cleaned house, cooked, laundered clothing, ran errands, served as driver and provided nursing services during decedent's last illness.

The evidence of decedent's intent to pay under an express contract was sketchy, at best. A long-time friend and former in-law of claimant, Mary Lee Smith, testified that she had been asked by the decedent if she had "an idea for him what to pay Pauline" for having taken care of the decedent. The trial court made a specific finding indicating it was discounting Mrs. Smith's testimony. The claimant testified that she and decedent had several discussions regarding his intent to pay her. However, none of these discussions were in the presence of third parties and no specific time, amount or method of payment was ever discussed. As noted above, Larry and Donna Slack also testified that the decedent had de-

clared his intent to change his will to omit the legacy to claimant, ask claimant what he owed her and to pay her when she returned from Minnesota. We note that Larry Slack also had made a claim against the estate for his services rendered to decedent. Slack's discussions about claimant's payment were at the same time that the decedent allegedly was discussing his intent to pay Larry Slack for services.

■ The trial court properly could, and apparently did, disbelieve the self-serving testimony of claimant and the Slacks. Disregarding such evidence, the trial court could properly find that there was no evidence of the terms of a specific contract, no evidence that decedent intended to pay claimant for her services, and no evidence of the extent and duration of the services rendered.

Testimony of the decedent's family was introduced indicating that decedent had never told his children of any employer-employee relationship between decedent and claimant. He had only referred to the claimant as his girlfriend.

In summary, we find that the evidence supported the findings by the court that claimant did not expect to be paid for the services which she provided, and that there was no express contract between claimant and decedent.

The final point of claimant is that the trial court erred in finding the $10,000.00 legacy in the will was intended to compensate her for services rendered. Inasmuch as no obligation to pay claimant was established, we need not decide whether the court was correct in finding that if an obligation existed, it was satisfied by the legacy.[1]

The judgment is affirmed.

CROW, C.J., and GREENE, P.J., concur.

---

1. For those curious about the so-called "doctrine of satisfaction", whereby a legacy to a creditor which exceeds the value of the debt is presumed to have been intended to satisfy the debt, see Annotation, *Legacy or Devise to Creditor*, 47 A.L.R.2d 1140.