RIDENOUR-BAKER GROCERY COMPANY, *Appellant,*
v. MONROE.

Division Two, December 22, 1897.

1. **Attachment:** FRAUDULENT CONVEYANCE. A conveyance of land by an insolvent, on the threshhold of insolvency, to her mother, wholly without consideration, will be set aside on the ground of fraud, as defined in the attachment act.

2. **Homestead:** HEAD OF A FAMILY. A "head of a family," within the meaning of the homestead act, is one who controls, supervises and manages the affairs about the house, not necessarily a father or a husband. And a "family" is a collective body of persons who live in one house under one head or manager.

3. —— : —— : DAUGHTER. The fact that an adult daughter is a part owner of the premises in which her parents reside, and that she does not reside with them, but aids her brother in supporting them, does not constitute her the head of a family so as to entitle her to claim such premises as a homestead.

*Appeal from Newton Circuit Court.*—HON. J. C. LAMSON, Judge.

REVERSED (*with directions*).

*Lyman W. White* for appellant.

(1) "A homestead is the place where the owner lives and resides. It must be used and occupied by the owner as the homestead." Thompson on Hom. and Exemp., sec. 100. (2) A family "is a collection of persons who live in one house and under one head or manager." Thompson on Hom. and Exemp., sec. 60. (3) In legal contemplation two elements are

essential to constitute a family headship. If other than the husband or father, he must not only be under a moral duty to support and does support those living with him, but he must also manage, supervise and control the affairs of the household. *Wade v. Jones*, 20 Mo. 77; *The State to use v. Kane*, 42 Mo. App. 253; Thompson on Hom. and Exemp., sec. 45; *Whalen v. Cadman*, 11 Iowa, 226; Waples on Hom. and Exemp., pp. 95, 96; *Beckman v. Myer*, 75 Mo. 333. (4) The court erred in refusing to permit the plaintiff's counsel to ask the witness, Dicey P. Monroe, who managed, supervised and controlled the Monroe family. *Wade v. Jones, supra; The State to use v. Kane, supra.*

*Brunk & Dabbs* and *Pratt & Phipps* for respondent.

(1) The homestead, not being subject to the rights of creditors, its conveyance can not be fraudulent as to them. *Davis v. Land*, 88 Mo. 439; *Burns v. Baugnet*, 92 Mo. 167; *Kendall v. Powers*, 96 Mo. 142; *Grimes v. Fortman et al.*, 99 Mo. 229; *Hart v. Leete*, 104 Mo. 316; *McKee v. Boyd*, 131 Mo. 682. (2) Parties who are under moral obligations to support parties living with them are heads of families. *Wade v. Jones*, 20 Mo. 75; *State ex rel. v. Kane*, 42 Mo. App. 253; Thompson on Hom. and Exemp., secs. 49, 50, 59, 66. (3) It is not necessary that homestead be owned by the head of the family. It may be owned by one of the other members of the family. Waples on Hom. and Exemp., p. 64, sec. 4; *Bank v. Senn*, 25 S. C. 572; *Morton v. Bertham*, 21 S. C. 381; *Brockman v. Crawford*, 3 Humph. 213; *Cunningham v. Sands*, 32 Wis. 391; *Parsons v. Livingston*, 11 Iowa, 226; *Kendall v. Powers*, 96 Mo. 142. (4) Homesteads may be claimed in joint estates or held by tenants in common.

Thompson on Hom. and Exemp., secs. 180, 182, 252; Freeman on Cotenancy, sec. 54. (5) The appellant complains that the court below erred in excluding evidence offered by the plaintiff as to who managed, supervised and controlled the Monroe family. This evidence was clearly incompetent, and if admitted could not have changed the result of the trial. *Wilkerson v. Allen*, 67 Mo 502; *Wilson v. Board of Execution*, 63 Mo. 137; *Bischoff v. Stumpf*, 10 Mo. App. 474. (6) The Supreme Court and the courts of appeals have refused to reverse, notwithstanding intervening errors, on the ground that the judgment was for the right party. *Take v. Bancroft*, 1 Mo. 163; *Swearingen v. Orine*, 8 Mo. 707; *Garesche v. Deane*, 40 Mo. 168; *Hedecker v. Ganzorn*, 50 Mo. 154; *Dunbar v. Weightman*, 51 Mo. 432; *Sebree v. Patterson*, 92 Mo. 451; *Deal v. Cooper*, 94 Mo. 62; *Ghio v. Beard*, 11 Mo. App. 21; *Brown v. Railroad*, 20 Mo. App. 427; *Brooking v. Shinn*, 25 Mo. App. 277; *Hunter v. McKeon*, 25 Mo. App. 660.

GANTT, P. J.—This is an appeal from a final decree of the circuit court of Newton county dismissing a bill in equity by plaintiff to set aside a certain conveyance of real estate in Neosho as fraudulent and to subject the same to a judgment in favor of plaintiff against Lula E. Monroe, the daughter of defendant. It is an equitable suit in aid of an attachment and based upon section 571, Revised Statutes 1889. The plaintiff was and is a creditor of the firm of Bryan & Monroe, composed of J. L. Bryan and Miss Lula E. Monroe, doing a mercantile business at Neosho from about the first of October, 1893, until about the twelfth of March, 1894, when the establishment was foreclosed by attachment suits in favor of the bank of Neosho and the plaintiff and other creditors.

Plaintiff's attachment suit was commenced on

March 15, 1894, and in due time judgment was obtained by plaintiff against the firm of Bryan & Monroe for the sum of $260.  On the seventh day of March, 1894, Miss Lula E. Monroe, by warranty deed, conveyed her undivided one half of the lot in suit to her mother, Mrs. Dicey Monroe, for the nominal sum of $270.  At the time said deed was executed Miss Lula Monroe and said firm of Bryan & Monroe were insolvent.  On the thirteenth day of March, 1894, the sheriff of Newton county attached and levied upon all the right, title and interest of said Lula Monroe in and to the lot in suit.

The evidence discloses that one Easterday, by deed dated May 25, 1891, and recorded March 16, 1892, conveyed the real estate in suit to Henry and Lula Monroe for the consideration of $145.  The lot in dispute is situated in Neosho, Newton county, and contains something less than three acres, being two hundred feet by six hundred feet, and a dwelling house of seven rooms is situated on it.  It is variously estimated at from $1,000 to $2,000.

Plaintiff charges the deed from Lula Monroe to her mother was fraudulent and without consideration and that the defendant combined and conspired with her daughter to cheat, defraud, hinder and delay the creditors of Bryan & Monroe, and prays that it may be set aside and said lot subjected to its judgment and for proper relief.  Defendant, in her amended answer, avers that she paid value for said lot, and *secondly*, it was and is a homestead and not subject to sale under execution or attachment.

The circuit court found for defendant and plaintiff appeals.

I.    This record leaves no doubt in our minds that the deed from Lula Monroe to her mother, Mrs. Dicey Monroe, was utterly without consideration.  The ev-

idence of the mother and daughter establish this fact. Miss Monroe testified that the consideration for the deed was a promise by her mother of $500 if the mother ever sold the place, $1 in cash and her mother's undivided interest in Tennessee land.   That she had never received any conveyance of the Tennessee land and she knew absolutely nothing of its location, value or amount.   The mother testified that she promised the daughter $250 if she ever sold the lot in dispute and her undivided interest in her Tennessee land, but she had no intention whatever of ever selling the Neosho lot. That she had never made her a deed to the Tennessee land.   It appears from Henry Monroe's evidence that his mother was one of eleven heirs in the Tennessee tract, but he did not know what county it was in.   He further testified that his mother had no means and was dependent upon himself and sister for support.   That his father had no property of any kind and his only income was a pension of $12 a month.

That Mrs. Monroe paid nothing for the lot in suit, is too plain for discussion.   A debtor hopelessly insolvent and conveying all of her visible property to a relative ought to be able to show something more tangible than the verbal promise of an insolvent person to pay something upon a condition which she announces she has no idea will ever happen, and an equally vague verbal agreement to convey real estate in a different State, of the value of which the vendee is totally ignorant.   Arrangements of this kind between near relatives upon the very eve of insolvency call for the closest scrutiny by courts of equity and we have no hesitancy in declaring this one a transparent fraud and void as against the plaintiff who was a creditor at the time it was conceived and attempted.   Indeed, counsel for the mother virtually concedes the fraud, but argues

that as it was a homestead its conveyance could not be fraudulent.

II.   The principal, and we may say the only, defense to this action is that the interest of Miss Lula Monroe was a homestead acquired by her prior to her becoming indebted to plaintiff and therefore not subject to attachment or sale for her debts.   Such was the finding of the circuit court and such is now the contention of defendant.   Section 5435, Revised Statutes 1889, provides that the homestead of *every housekeeper or head of a family* consisting of a dwelling house and appurtenances and land used in connection therewith which is or *shall be used* as a homestead by such housekeeper or head of a family, shall be exempt, etc.

Long before the adoption of our homestead act this court had defined the words ''head of a family'' to be one who controls, supervises and manages the affairs about the house, not necessarily a father or a husband. *State v. Slater*, 22 Mo. 464; *Spengler v. Kaufman*, 46 Mo. App. 644; *Wade v. Jones*, 20 Mo. 75; *State to use v. Kane*, 42 Mo. App. 253.

''A family is a collective body of persons who live in one house under one head or manager.''   *Duncan v. Frank*, 8 Mo. App. 286.

Her brother testified that his sister resided in St. Joseph.  He lived in Denison, Texas, when his deposition was taken.   The defendant, Mrs. Dicey Monroe, was asked ''Who is the head of your family?'' and answered ''All of us.''   ''Hydra headed family?'' ''Yes, sir.''   ''How many claim to be the head of the family?''   ''We all claim it.''   ''The children are all past age.''   When asked how much Miss Lula contributed to the support of the family, said she didn't know.   That Henry, her son, contributed as much as Lula to the support of the family.

Reduced to a simple proposition the question is,

does the fact that an adult daughter is a part owner of the premises in which her parents reside, but does not reside with her parents but aids her brother in supporting them, constitute her the head of a family so as to entitle her to claim said premises as her homestead? By the same token her brother is also a head of the family and the natural head; the father is dethroned. It is too plain for argument that Miss Monroe did not control, supervise or manage the family affairs of her father's house. It is one thing to aid and assist one's parents by remittances from time to time and quite another to assume control of their household and manage and supervise the matters about the house.

The defendant's counsel objected to the effort of plaintiff's attorney to prove who managed and controlled the house, and the court sustained the objection. In the absence of proof to the contrary we entertain no doubt that the father was the head of that family in the contemplation of law. As this exemption must stand, if at all, upon our statute, and the evidence utterly fails to establish that Miss Lula Monroe was the *housekeeper or head of her father's family*, her claim of homestead in this lot can not be upheld. Not being her homestead, she could not make a voluntary conveyance of her interest in the lot to cheat her creditors.

The judgment of the circuit court is reversed with direction to the circuit court to enter a decree that the deed from Lula Monroe to Dicey Perkins Monroe was without consideration and voluntary, and was made to hinder, delay, cheat and defraud the creditors of said Lula Monroe and decree it to be null and void as to her creditors, and that plaintiff has a lien thereon to the amount of its judgment, interests and costs against the firm of Bryan & Monroe and its costs in this behalf laid out and expended in the circuit court of Newton county and in this court and that it have all proper

Sherlock v. K. C. Belt R'y Co.

execution and process for the sale of said premises to satisfy said judgment and costs. SHERWOOD and BURGESS, JJ., concur.