BIRCH, Appellant, v. BIRCH, Respondent.

St. Louis Court of Appeals, February 21, 1905.

1. **IMPLIED CONTRACT: Gratuitous Services: Evidence of
   Agreement for Compensation.** In an action against an admin-
   istrator for services rendered the deceased in his last illness, a
   deed conveying real estate to the plaintiff for a recited consider-
   ation of one dollar, and made long prior to the rendition of the
   services and before it could have been anticipated that they
   would be needed, was inadmissible in evidence to show payment
   for such services.

2. ———: ———: **Member of Family.** Where one member of a
   family renders services to another member, the law presumes

such services to be gratuitous, and in order to overcome such presumption, an agreement express or implied to pay for such services must be shown.

3. ――――: ――――: ――――: **Jury Question.** Where there is evidence tending to show an implied contract on the part of one member of the family to pay for services rendered by another, the question whether the contract existed or not is for the jury.

4. ――――: **Members of Family: Gratuitous Services.** Where it was shown that an uncle lived in the house adjoining his niece, took his meals at her house until he became too ill and then was moved to her house for the purpose of being nursed and cared for through his last sickness, where he was not dependent upon her for support and she was under no legal or equitable obligations to support him, this was insufficient to show that he was a member of her family so as to raise the presumption that the services rendered by her in caring for him were gratuitous.

Appeal from Greene Circuit Court.—*Hon. J. T. Neville,* Judge.

REVERSED AND REMANDED.

*J. P. McCammon* for appellant.

Plaintiff showed by the testimony of Mrs. Sarah Koons, sister of deceased and mother of plaintiff, that the deceased brought that deed to her and left it to be by her delivered to plaintiff, asking her at the time to hand it to her daughter and saying that he gave it to her for her care of his granddaughter, Essie Godbey. She also testified that the deceased at various times told plaintiff that she should be well paid for taking care of him and at other times told witness so. The chief errors of which plaintiff complains were in the refusal of the instructions asked by her, which refusal demonstrates the theory of the law upon which the court proceeded, and that was the necessity of an express contract before plaintiff could recover. Sprague v. Sea, 152 Mo. 335, 53 S. W. 1074; Shannon v. Carter, 99 Mo. App. 134, 72 S. W. 495; Lillard v. Wilson, 178 Mo. 145; Ramsey v. Hicks, 53 Mo. App. 195; Ryans v. Hospes, 167

Mo. 342; Voerster v. Kunkel, 86 Mo. App. 197; Whaley v. Peck, 49 Mo. 83; Smith v. Myers, 19 Mo. 434. Measured by the standard fixed in the foregoing authorities, that the action of the court in giving the peremptory instruction under the uncontradicted testimony of Mr. Boyd and Mrs. Koons that deceased said to them and told plaintiff she should be well paid for her trouble in caring for him in his great affliction was error, attains the certainty of a mathematical demonstration.

*Patterson & Patterson* and *T. J. Murray* for respondent.

There is no evidence in the case showing that Laura E. Birch expected to charge for the services rendered as set out in her account and filed in the probate court, and the only evidence offered by plaintiff in the case that in the least degree tends to show that Mr. Day expected to pay for the services rendered by Laura E. Birch, is that found in the deposition of Mrs. Sarah Koons, and a careful reading of her testimony will show that her evidence did not tend to prove a contract on the part of Mr. Day to pay for these services, but only shows a kindly feeling for her. These statements at best are only loose declarations made to others and not to the claimant, or in her presence, and there is no evidence showing that the claimant had any knowledge or information of these declarations at the time of rendering the services. Woods v. Land, 30 Mo. App. 176; Sloan v. Dale, 90 Mo. App. 87; Ratcliff v. Lampee, 82 Mo. App. 335.

## STATEMENT.

About December 31, 1902, George A. Day died testate, in the city of Springfield, Missouri. His will was executed October 6, 1899. In his will he referred to a house and lot he had previously deeded to plaintiff, and willed her his household furniture, and some trin-

kets valued at thirty-five dollars. To plaintiff's husband, William Birch, Day willed one-half of a grocery store in which he and Birch were joint owners. The remainder of his estate he willed to Paul Day, his nephew, and S. M. Godbey, his son-in-law. William E. Birch was his nephew and plaintiff was his niece by both blood and marriage. Plaintiff presented the following account for allowance against the estate of the decedent:

"For nursing said Day 98 days from Sept.
    24, 1902, to December 31, 1902, at $3
    per day .. ........................$294 00
14 weeks board and room at $4.50 per week   63 00
14 weeks washing at $1 per week.........   14 00

"Total .. .. ......................$371 00"

The claim was disallowed by the probate court and plaintiff appealed to the circuit court where, on a trial anew, she was compulsorily nonsuited; from this ruling she appealed to this court.

The following from plaintiff's statement is a fair summary of the evidence in respect to the services she rendered deceased:

"The facts developed on the trial showed that the deceased, for several years before his death, was in bad health, and for the last hundred days of his life was almost entirely helpless; that he was afflicted with an enlargement of the prostrate gland which made it necessary for a year or more before his death to draw his urine with a catheter; that he had a chronic diarrhea and at most times an inordinate appetite which it was impossible to control and which aggravated the diarrhea; that he was partially paralyzed—the effect of the paralysis being not only to destroy almost altogether the use of his lower limbs but also to destroy all control of his bowels, and the effect of which, in conjunction with his diarrhea, was to make his care burdensome and

trying in the extreme, involving constant care, and the washing of his person, his clothing and bed clothing daily and oftener. In addition to this his mind was affected and he was fretful and peevish, 'finicky' about his food and though he could walk and would attempt to do so when incapable by reason of weakness and of his loss of the proper use of his limbs, and had to be constantly watched to prevent his falling and injuring himself, all the care and watching he had been powerless to prevent his making such attempts and he having fallen on several occasions.

"The testimony established (and there was nothing to controvert it anywhere) that during this time the plaintiff had the sole care (the use of the catheter alone excepted), cooking special dishes as required by his condition and as the caprice of his appetite demanded, taking such care of his room, of his clothing and of his bedding as called for the unstinted praise of the physician who attended him and of all who visited him, including relatives, she herself doing the washing until two weeks before his death, when her own condition prevented her doing it and when it was found impossible to get any one else to do it by reason of its extreme filthiness, and from which time until his death his clothing and bedding were burned."

Mrs. Mary Koons, the mother of plaintiff and sister of the deceased, testified that the deceased in her presence told plaintiff at various times that she should be well paid for her services, and had also told her (witness) that plaintiff should be well paid.

An old friend and neighbor of deceased, J. J. Boyd, testified that Mr. Day told him some time after the death of his granddaughter that he had intended for her and himself to keep house after she finished school, but since her death there were no others left but Mrs. Birch for him to live with and he would have to make his home with her the rest of his days. But he said,

"I may live a good long while and I may not live long, but she will take good care of me. I am satisfied I will be taken care of and she will be well paid for it." Witness also testified that deceased said he would have to change his will, to the execution of which J. J. Boyd was a witness.

The evidence shows that about twelve years before Day's death, plaintiff and her husband resided in the city of St. Louis, and after the death of Mrs. Day, Day made three trips to St. Louis to solicit the Birches to move to Springfield where he resided, saying that he wanted W. E. Birch to take charge of his grocery store in said city. The nearest relation deceased had at this time was a grandchild, Essie Godbey, whose mother had died several years previous. The Birches, on Day's solicitation, moved to Springfield where they occupied a house belonging to the deceased and paid rent therefor until about the first day of April, 1893. Essie Godbey was a school girl and from the evidence appears to have been in delicate health and when sick was taken care of by the plaintiff. Her last sickness extended over about eight months, during all of which time she was tenderly nursed and cared for by the plaintiff. She died some time prior to March, 1899. Her grandfather expressed his gratitude for the care that Mrs. Birch gave her in her last sickness and on March 18, 1899, deeded her a house and lot in the city of Springfield for the express consideration of one dollar.

The evidence further shows that at first Day lived in a house adjoining plaintiff's and after he became too feeble to get around and unable to care for himself, the Birches moved him to their house. The evidence also shows that while he lived alone he took his meals with the Birches and after he became too feeble to come for his meals they were carried to him by some of the Birch family until he was removed to their house. The Birches lived in a house belonging to Day. There is no evidence that they did or did not pay rent after April,

1893, or any evidence as to whether or not Day paid them for his board.

BLAND, P. J. (after stating the facts).—The evidence is sufficient to show that Day intended and agreed to compensate plaintiff for the services she rendered him during his last sickness; but there is no evidence that she intended to charge for her services, and the trial court, either on the assumption that plaintiff had been compensated for these services in advance, by the conveyance to her by Day of the house and lot, or on the assumption that Day was a member of her family at the time the services were rendered, nonsuited plaintiff. The conveyance of the real estate was made long prior to the rendition of the services and before it could be known or even anticipated that the particular services would be needed and, I think, as the evidence inferentially shows, the deed was made for another and different consideration, to-wit, for the services and kindness of the plaintiff to Day's granddaughter. This conveyance was entirely foreign to any issue in the case and should not have been admitted in evidence. Was Day a member of plaintiff's family when she rendered the services for which she charges, is the important question in the case. If he was, the authorities in this State are all one way that when services are rendered one member of a family by another member, the law presumes they were gratuitous and to overcome this presumption an agreement, express or implied, to pay for such services must be shown. Sloan v. Dale, 90 Mo. App. l. c. 90, and cases cited. If it be assumed that plaintiff's evidence tended to show that Day was a member of her family, there is also evidence tending to show an implied contract on Day's part to pay for the services she rendered him and the question of whether there was such an agreement was for the jury. But returning to the question, was Day a member of plaintiff's family? "Family," at law, is a collective body of

persons who live in one home, under one head or management.    Duncan v. Frank, 8 Mo. App. 286; Ridenour-Baker Grocery Co. v. Monroe, 142 Mo. 165, 43 S. W. 633; Leake v. Lucas, 62 L. R. A. 190; Pearson v. Miller, 42 Am. St. Rep. 470; Bair v. Robinson, 108 Pa. 247; Menefee v. Chesley, 98 Iowa 55; Neasham v. McNair, 103 Iowa 695.

In Roco v. Green, 50 Texas l. c. 490, the court drew from the authorities the following rules to determine when the relation of family, as contemplated by law, exists:

"1.    It is one of social status, not of mere contract.

"2.    Legal or moral obligation on the head to support the other members.

"3.    Corresponding state of dependence on the part of the other members for this support."

In Grand Lodge v. McKinstry, 67 Mo. App. 82, it was ruled: "The term family, as used in the statutory provision authorizing such a corporation (a fraternal beneficiary association) to provide for the relief of families of deceased members, may embrace those whom a member is equitably bound to support." Construing the meaning of the term family used in the same statute, this court, in Hofman v. Grand Lodge, 73 Mo. App. 47, said that the term family should be construed to embrace "such persons as habitually reside under one roof and form one domestic circle, or such as are dependent upon each other for support, or among whom there is a legal or equitable obligation to provide support."

Numerous cases might be cited where the term is given a more or less expanded or restricted interpretation for the purpose of preventing the lapse of a beneficial life insurance policy or for the purpose of carrying out the beneficial provisions of a statute or to administer the bequests of a testator as expressed in his last will. The case at bar does not fall within any rule or policy requiring either an expanded or restricted inter-

pretation of the term and I apprehend that we must look to the ordinary definition of the term to ascertain whether or not Day was a member of the Birch family. According to the evidence, he resided under a different roof until he became so feeble as to require a nurse and then, for the first time, he was taken under the Birch's roof, not as a member of the family but for the purpose of being cared for and nursed through his sickness. Day was not dependent upon the Birches for his support and there is no evidence that Mrs. Birch was under any legal or equitable obligation to support him and I think the evidence is wholly insufficient to show that he was a member of her family. But if the question is at all in doubt, being a question of mixed law and fact, it should have been submitted to the jury under appropriate instructions. The evidence is all one way that the services were rendered by plaintiff and were accepted by Day and that they were worth all and more than plaintiff claims for them; if they were not gratuitous, the law implies an agreement that they should be paid for. Sprague v. Sea, 152 Mo. 327, 53 S. W. 1074; Bosard v. Powell, 79 Mo. App. 184.

The judgment is reversed and the cause remanded. All concur.

