Robert SEVIER and Alma Lee Sevier (Claimants), Appellants,

v.

ESTATE OF James A. STAPLES, Deceased; Earl T. Crawford, Administrator, Respondent.

No. 22631.

Kansas City Court of Appeals.

Missouri.

Nov. 4, 1957.

Harold W. Barrick, Sedalia, for appellants.

Henry C. Salveter, Crawford & Harlan, Sedalia, for respondent.

BROADDUS, Presiding Judge.

This case arose in the Probate Court of Pettis County, where Robert and

Alma Lee Sevier filed a claim against the estate of James A. Staples, deceased, for services rendered said deceased during his lifetime. In said claim appellants allege "that there is due them from the estate of Jas. S. Staples, deceased, the sum of $3434.-74 on account of care, board and room, travel expense and house repairs. An itemized statement of such claim showing dates and amounts is as follows:

"Fifty Months—Care, Board & Room $5360.00
Repair on House 173.74
Transportation 341.00
 ─────────
 $5874.74
Less Rental, 61 months @ $40 2440.00
 ─────────
 $3434.74 due"

Appellants obtained a judgment in the Probate Court for $3434.74, after which the administrator of the estate of James A. Staples, deceased, appealed to the Circuit Court where the case came on for trial on the 2nd day of October, 1956. At the close of the evidence offered on the part of appellants (claimants) and at the request of the respondent administrator, the court sustained a motion to dismiss appellants claim. From this action of the court, claimants, in due time and manner, perfected their appeal to this court.

The facts developed at the trial, briefly stated, are these: In June, 1949, claimants rented from deceased Staples the "downstairs part" of his house in Houstonia at an agreed rental of $40 per month, he taking one meal a day at 50¢ per meal, to be deducted from the rent. In January 1950, the deceased suffered a stroke and thereafter became increasingly feeble and disabled. As one witness put it, "he just went downhill." From January 1950, deceased took all of his meals with claimants, but did not pay for them Nor did claimants pay the $40 per month rent from January 1950 to February of 1955. Mr. Staples died February 7, 1955. He was then about 80 years of age. He was not related to claimants either by blood or marriage.

The testimony shows that the stroke Mr. Staples suffered in January 1950 "left him a cripple—in his limbs and one hand." However, he was able to go up and down stairs without assistance. And he worked some in the garden and about the yard. He "had to have help at the table", and at times Mrs. Sevier had to "feed him with a spoon."

Dr. Edwards of Sedalia testified that he was acquainted with deceased's condition during the period from January 1950 until February 1955. He testified that "Mr. Staples had high blood pressure; he had had a stroke and during the latter stages of his illness he had fecal incompetence, his bowels weren't under good control; * * * when he became incompetent, he was almost like a baby again and he was wearing a diaper the last time I was there. She (Mrs. Sevier) had fixed a pad for him so if his bowels moved he would have this diaper pad." Dr. Edwards also testified that deceased came to his office several times being accompanied on each occasion by Mrs. Sevier. After awhile "it became too much of an effort for him to get up my stairs. I have a second floor office and after his stroke he began to lose strength, it was too hard to make the trip in, about twenty miles and up to my office and then back home. It was too exhausting to him. * * *. So it was necessary for me to go to Houstonia to see him."

The testimony shows that claimants were "very attentive" to Mr. Staples. Mrs. Sevier cooked his meals, did his washing and ironing, gave him his medicine and generally "looked after him." The testimony shows that these services were reasonably worth from $100 to $140 per month. The evidence also shows that claimants took deceased to Chicago on more than one occasion so that he could visit his daughter. They went to Jackson, Illinois, and met him on one occasion when he was returning from Chicago. They took him to Kansas City to catch the train to Chicago on more than one occasion.

Mr. Robert Sevier, Sr., the father of claimant, Robert Sevier, testified that in

**708**

the summer of 1954 he had a conversation with deceased; that deceased said: "he wanted them (claimants) to have it (the home) and to see that they were well paid, * * * he said he intended for them to have the home and they would be reimbursed and bragged on what Sis (Mrs. Sevier) done for him, which I think he was entitled to do."

 It is conceded that the action of the trial court in sustaining defendants' motion for a directed verdict was based upon the view that a family relationship existed between claimants and deceased as a matter of law. It is the settled rule of this State that when services are rendered one member of a family by another member, the law presumes they were gratuitous and to overcome this presumption an agreement express or implied to pay for such services must be shown. Birch v. Birch, 112 Mo.App. 157, 163, 86 S.W. 1106.

 In testing the sufficiency of the evidence to make out a case submissible to a jury upon motion for a directed verdict, the claimants' evidence must be considered true, and they are to be given the benefit of every inference of fact which can be reasonably drawn therefrom. Kopp v. Traders Gate City Nat. Bank, 357 Mo. 659, 210 S.W. 2d 49, 51.

In the case of Offord v. Jenner's Estate, Mo.App., 189 S.W.2d 173, 176, it is said: "The term 'family,' within the rule above mentioned, has been defined as a collective body of persons under one head and one domestic government, who have reciprocal, natural, or moral duties to support and care for each other. Wood v. Lewis' Estate, 183 Mo.App. 553, 167 S.W. 666; Birch v. Birch, 112 Mo.App. 157, 86 S.W. 1106, 71 C.J. 55."

In the instant case the evidence is undisputed that the initial relationship between claimants and deceased was of a contractual nature. Claimants rented from deceased only the downstairs portion of his house. He at all times retained possession and control of the upstairs portion. Some of the witnesses referred to it as the "upstairs apartment." Certainly it cannot be said that the evidence in this case when viewed in a light most favorable to claimants conclusively shows "a collection of persons who form one household, under one head and one domestic government." Nor can it be said that claimants were under any "natural or moral" duty to support and care for deceased. They were not related to him in any way.

Many cases have come before our appellate courts involving the question here presented. The Birch case, supra [112 Mo. App. 157, 86 S.W. 1108], says that "if the question is at all in doubt, being a question of mixed law and fact, it should be submitted to the jury under appropriate instructions."

In 71 C.J. page 56, it is said: "In the last analysis the question of whether or not a family relationship existed is a mixed question of law and fact determinable only by reference to all the circumstances involved."

One of the best considered cases is that of Lillard v. Wilson, 178 Mo. 145, 77 S.W. 74, 77. It reviews many Missouri decisions. The following language appearing in that case is clearly applicable to the instant case:

"There is one circumstance in this case that tends strongly to take the case out of the rule that services rendered by a child to a parent while living in the house of the parent are presumed to have been gratuitously rendered, and that is that though the plaintiff Edward was the son of the deceased, and the plaintiff Bettie was his daughter-in-law, and though they lived with their family in a house belonging to the deceased, and though the deceased and his wife also lived in the same house, it is not true that the plaintiffs were living in the family of deceased. On the contrary, though the relation of parent and child existed between the deceased and plaintiffs, and though both families lived in the same house, it was not as a child lives with a

parent as a member of his family, but was the result of a business arrangement whereby the son paid the father rent for the farm, and, as a part of the arrangement, their two families lived together in the same house, each furnishing one-half of the family supplies. This very arrangement excludes prima facie any idea that either expected the other to give him 'something for nothing,' or as a result of relationship, but that it was a matter of business between them. In no true sense, therefore, can it be said in this case that the plaintiffs lived in the family of the deceased. Under such a state of facts, the question was clearly one for the jury, whether the services were intended to be gratuitous or under an implied promise of remuneration, and the trial court erred in taking the case from the jury."

The judgment is reversed and the cause remanded for a new trial.

All concur.