Lucy STEVA, Respondent,

v.

Ernest STEVA, Administrator of the Estate of Clem D. Steva, Deceased, William Mc-Crae, Administrator Pendente Lite, Appellant.

No. 47458.

Supreme Court of Missouri,

Division No. 2.

March 14, 1960.

Wilson D. Hill, Dick B. Dale, Jr., Richmond, for appellant.

E. A. Farris, Richmond, for respondent.

BOHLING, Commissioner.

Mrs. Lucy Steva filed a claim in the Probate Court of Ray County, Missouri, against the estate of Clem D. Steva, deceased, for the reasonable value for washing, ironing and mending his clothes and bedclothes and supplying and cooking his meals from January, 1918, to October, 1957. Ernest Steva, a son of claimant, was the administrator of said estate. William McCrae, public administrator of Ray County, was appointed administrator ad litem to defend. § 473.423. Statutory references are to RSMo 1949, V.A.M.S. The cause was transferred to the Circuit Court (§ 473.420, subd. 2) where a jury trial resulted in a verdict and judgment of $8,000 for plaintiff. The points for discussion on this appeal are defendant's contentions that a "family relationship" existed and plaintiff failed to overcome the presumption that her services were gratuitous; and that a substantial break in plaintiff's services occurred and she is not entitled to recover for services

"from 'sometime after 1918' to July 20, 1957," as submitted in plaintiff's main instruction.

■ Plaintiff has filed a motion to dismiss defendant's appeal or to affirm the judgment under Supreme Court Rule 1.15 for failure to comply with the provisions of Rule 1.08, subd. a(4) (42 V.A.M.S.) requiring specific page references to the transcript in the argument, and the setting forth of the whole or the questioned portion of any instruction under attack. Defendant's brief is not free from fault. Defendant's "Argument" is brief, as is his "Statement of Facts," each being less than two printed pages in length. References to the transcript pages are in his statement of facts. His complaint against plaintiff's instruction is stated in the preceding paragraph. We have had no difficulty in following defendant's points and argument on the matters hereinafter discussed; and are also of the opinion they involve "substantial rights" within the meaning of Rule 3.27. Plaintiff is not entitled to have defendant's appeal dismissed or the judgment affirmed, and the motion is overruled.

Clem D. Steva owned 110 acres of valuable land, located about two miles out of Richmond, Missouri. John Steva, plaintiff's husband and Clem's brother, owned the farm across the road. John died in 1953. Clem died October 20, 1957, intestate. Clem was not declared incompetent; but John managed Clem's farm and estate, perhaps under a power of attorney, until John's death. Soon thereafter, January 8, 1954, Clem executed a power of attorney to plaintiff's son Ernest W. Steva to manage his affairs.

The house on Clem's farm was about a quarter of a mile from John's house. Several witnesses for plaintiff testified that beginning prior to 1918 and, subject to the exceptions hereinafter stated, continuing to sometime after John's death, when Clem moved to plaintiff's home, Clem came to plaintiff's home three times a day for his meals, and one a week brought his clothes and bedclothes to plaintiff's home for her to wash, iron and mend. The house on Clem's farm burned, the record indicates sometime between 1931 and 1939. Clem then moved to John's home, and when he finished a new house on his farm, about one-eighth of a mile from John's home, he moved back, and continued taking his meals and having his washing, ironing and mending done at plaintiff's home. Clem was a bachelor, and was described as being eccentric, a person who was messy at the table and soiled his clothes and bedclothes, but one who liked to have clean clothes. There were occasions in 1954 and thereafter when Clem was confined to a hospital and did not take his meals at plaintiff's, but she kept him in clean clothes. Clem was in a rest home and plaintiff performed no services for him the last two or three months of his life.

■ Plaintiff, having received the verdict of the jury, is entitled to the most favorable view of the probative evidence, together with the reasonable inferences arising therefrom, on the issues of fact involved, and to have defendant's evidence disregarded unless it aids plaintiff's case. Ashley v. Williams, 365 Mo. 286, 281 S.W. 2d 875, 877 [1]; Vosburg v. Smith, Mo. App., 272 S.W.2d 297, 303 [14]; Todd v. Terry, 26 Mo.App. 598, 610.

■ Defendant contends a "family relationship" existed between plaintiff and her brother-in-law. Where a family relationship exists a presumption ordinarily arises that there was no promise to pay and no intention to charge for services of the nature here involved; that the services rendered were gratuitous, and that the claimant has the burden of establishing the contract to pay. Wells v. Goff, 361 Mo. 1188, 239 S.W.2d 301 [1, 6]; Vosburg v. Smith, Mo.App., 272 S.W.2d 297, 301; Trask v. Davis, Mo.App., 297 S.W.2d 792, 797 [6–10]; Annotation, 7 A.L.R.2d 15. The term "family," within the rule under discussion, "has been defined as a collective body of persons under one head and one domestic government, who have reciprocal,

natural, or moral duties to support and care for each other." Offord v. Jenner's Estate, Mo.App., 189 S.W.2d 173, 176; Sevier v. Staples' Estate, Mo.App., 309 S.W.2d 706, 708. A relationship of sisters-in-law, in and of itself, does not give rise to a presumption that services are rendered gratuitously. Wharton v. Denny, 222 Mo.App. 260, 296 S.W. 183, 187. In this case the performer and the recipient were not members of a collective body under one head and one domestic government, who had reciprocal, natural, or moral duties to support and care for each other. Clem came to plaintiff's home to take his meals and bring and carry back his wash and, later, after plaintiff's husband's death moved into plaintiff's home that he might more conveniently receive such services. See Lillard v. Wilson, 178 Mo. 145, 157, 158, 77 S.W. 74, 77. The law ordinarily implies a promise to pay for valuable services rendered by one and accepted by another person, the parties being strangers. Wells v. Goff, supra [1]; Sprague v. Sea, 152 Mo. 327, 332, 53 S.W. 1074, 1076(1); Wharton v. Denny, supra; Offord v. Jenner's Estate, supra [4]; Keeshan v. Embassy Inv. Co., Mo.App., 303 S.W.2d 666 [5]; Annotation, 7 A.L.R.2d 130. We are of opinion the record brings this case within the last mentioned rule. The jury found that plaintiff was entitled to compensation for the services performed.

■ Mrs. Charlene Bates, who was reared at plaintiff's home, testified that during the last year of Clem's life she said to him " 'Clem, you should have something put aside for Mom for taking care and waiting on you like this,' and he said 'Yep.' " Mrs. Helen Mohn, a niece of plaintiff's, testified that when she was trying to give Clem "his medicine, and he wouldn't take it from me," she said " 'Don't you think you are expecting an awful lot of Aunt Lucy,' and he said 'Well, what I have will be hers someday.' " Like statements have been considered as tending to establish an implied agreement to pay for the services rendered.

Thomas v. Fitzgerald's Estate, Mo.App., 297 S.W. 425, 429 [10].

■ Under plaintiff's verdict directing instruction, so far as material to the issue, the jury was directed to allow plaintiff the reasonable value of her services "from sometime after 1918 to July 20, 1957," and defendant makes the point in his brief that plaintiff failed to prove continued and uninterrupted services, without substantial break, "from 'sometime after 1918' to July 20, 1957," and the instruction was erroneous in this respect.

Plaintiff's point answering defendant states that she rendered the services sued for continuously from some time after 1918 to about two months before recipient's death, which was October 20, 1957; that the statute of limitations does not apply, and that she is entitled to recover for the whole period. From the testimony, if believed, of defendant's witnesses Mrs. Willa Dawson, who operated the Richmond Hotel where Clem stayed for a while, and Lonnie W. Hamner, who operated a restaurant where Clem had his meals while at the hotel, the jury could find that Clem lived and had his meals in Richmond from 1928 to 1933; and William R. Manley was of the opinion Clem stayed at the hotel from 1922 until 1930, or perhaps, 1934. The testimony of plaintiff's witnesses, who were shown to have testimonial qualifications and testified on this issue, confirmed defendant's testimony that for a time Clem lived in Richmond. Plaintiff's son Melvin Steva testified that "the latter part of World War I he [Clem] left there [the farm] and lived here in Richmond." He testified on cross-examination: "Q. You know he lived there [at the hotel] about five years? A. I would say that long. Q. You would say at least five years? A. Yes"; and also that during that time plaintiff did not wash for Clem or perform services for him. Mrs. Charlene Bates was taken into plaintiff's home in 1918 when eight months old and lived there until April, 1943. She remembered that Clem stayed at the hotel and,

during that time, did not have three meals a day at plaintiff's, although he made frequent trips to plaintiff's, and plaintiff did not wash for him. Mrs. Arah Steva, a daughter-in-law of plaintiff, testified Clem stayed at the hotel sometime prior to 1931, but did not remember what years. Melvin Steva, recalled, testified that it was prior to 1926 when Clem stayed at the hotel.

Under plaintiff's and defendant's evidence plaintiff rendered services after 1918 and prior to the break occasioned by Clem's living in Richmond in the continuity of her services.

Plaintiff's claim was for services from January, 1918, to October 20, 1957, but her instruction sought a recovery only for services to July 20, 1957. It appears that plaintiff caused the instruction to conform to the proof as to when the services ended but overlooked having it conform to the testimony establishing a break in the continuity of the services after 1918.

A like issue was before the court in Minor v. Lillard, Mo., 289 S.W.2d 1, 6, which involved a claim for services over a period in excess of six years and a break in the continuity of the services of about a year. The court, reviewing cases, stated:

"[6] It is of the essence of a claim for services rendered over an extended period of time, under either an express or implied contract which does not fix the terms of employment or the time . when compensation shall be paid, that the services must have been *continuous*, and this essential is required even in those cases decided upon the fiction and analogy of an open, current account between the parties." See Annotation, 7 A.L.R.2d 207–209, 214, 215.

Plaintiff in her argument states that, even though there was a substantial break in her services, the jury, under one of defendant's instructions, could consider only her services following the break. Plaintiff cites no authority. Plaintiff's instruction was not so worded. We think the two instructions conflicted; and, if not, are confusing when considered together.

■ The remaining point in defendant's brief, relating to proof of the value of plaintiff's services, need not be detailed. There was testimony permitting of a finding that $3 a week was a reasonable charge for washing, ironing and mending for a farmer. See also Ashley v. Williams, 365 Mo. 286, 281 S.W.2d 875 [10]; Sprague v. Sea, 152 Mo. 327, 334, 53 S.W. 1074, 1076 (3).

Under the authority of Minor v. Lillard, supra, the judgment may not stand. The record established that plaintiff is entitled to compensation for services rendered which were continuous and not barred by limitations. The judgment should be reversed and the cause remanded for retrial only on the issue of the amount of compensation to which plaintiff is entitled. It is so ordered.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.